IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| SMILEDIRECTCLUB, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO._____ |
| | ) |
| GLENN MARTZ MINOR, II | ) JURY DEMAND |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

Plaintiff SmileDirectClub, LLC ("Plaintiff" or "SmileDirectClub"), for its Complaint against Glenn Martz Minor, II ("Defendant"), states as follows:

### I. THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Tennessee, with its principal place of business located at 414 Union Street, 8th Floor, Nashville, TN 37219.

2. Upon information and belief, Defendant is a resident of Missouri and resides at 126 E. Maple Avenue, Kirkwood, Missouri 63122.

### II. NATURE OF ACTION

3. This is an action for breach of contract, defamation, and trade libel under Tennessee law.

1

## III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizen of different states and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

5. Upon information and belief, this Court has personal jurisdiction over Defendant based on his agreement to be subject to this Court's jurisdiction when he signed the General Release agreement. A copy of the General Release agreement attached hereto as sealed <u>Exhibit 1</u>.

6. Further, this Court has personal jurisdiction under Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-201 *et seq.*, because, upon information and belief, (1) Defendant has transacted business in Tennessee; (2) the tortious acts or omissions occurred in Tennessee; (3) the damages occurred in Tennessee to a corporation with its principal place of business in Tennessee; and (4) jurisdiction based on Defendant's contacts with Tennessee is not inconsistent with the Constitution of the State of Tennessee or the Constitution of the United States.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant agreed to venue in this Court when he signed the General Release agreement, and, upon information and belief, Defendant is subject to personal jurisdiction pursuant to Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-201 *et seq.*

## IV. THE CONTROVERSY

### A. Plaintiff's Services

8. SmileDirectClub offers licensed dentists and dental practices access to its web-based teledentistry platform and a comprehensive package of related non-clinical business and administrative services that permit those dentists to offer a more affordable option for

orthodontic treatment of minor to mild cases of malocclusion with "invisible" corrective aligners.

9. "Malocclusion" is a misalignment or incorrect relation between the teeth and the two dental arches when they approach each other as the jaws close. More simply, "malocclusion" refers to having a poor bite or crooked teeth.

10. At the core of SmileDirectClub's business model is its innovative web-based teledentistry platform, which is designed around the SmileCheck® system. The SmileCheck® system is a proprietary system that connects patients with their treating dentist through a web-based portal. Through the SmileCheck® system, a dentist can view images and dental impressions of his or her patients, review and develop treatment plans, prescribe treatment, track the performance of the case through retention, and document communications with patients. Likewise, a patient can access the SmileCheck® system to upload images, view their recommended treatment plan and keep apprised of developments in their treatment.

11. Dentists who choose to engage the services of SmileDirectClub are licensed and qualified to practice dentistry in the state in which they treat patients.

### B. Defendant's Intentional and Unlawful Conduct

12. In 2015, Defendant signed up for and obtained aligners from SmileDirectClub.

13. Apparently unhappy with the results of the aligners he received, Defendant filed a lawsuit in the Circuit Court for St. Louis County, Missouri, Small Claim Court, Case No. 16SL-SC01260, against SmileDirectClub (the "Missouri lawsuit").

14. In the Missouri lawsuit, Defendant asserted that SmileDirectClub's aligners and services failed him because he allegedly has continued issues with malocclusion.

15. In an effort to resolve the case to Defendant's satisfaction, SmileDirectClub and Defendant entered into a confidential General Release agreement dated December 19, 2016.

16. Although SmileDirectClub expressly denied any liability and wrongdoing because it does not believe Defendant's claims were true, SmileDirectClub agreed to pay to Defendant a total small sum of money in exchange for a release of all claims, dismissal of the Missouri lawsuit, a confidentiality obligation, and other terms.

17. In the confidentiality obligation of the General Release agreement, Defendant agreed to keep strictly confidential and not make public, disseminate, release or otherwise reference, allude to, or suggest to any person, agency or other entity including the media or press, in any manner whatsoever, the terms or the existence of the agreement or the facts underlying the Lawsuit.

18. In the General Release agreement, Defendant agreed that any violation of the agreement, including but not limited, to a violation of the confidentiality obligation, would give SmileDirectClub the right to seek remedies, including actual damages and/or injunctive relief as may be appropriate and provided by law and/or equity.

19. On February 20, 2018, KSKI-SL, the NBC affiliate in St. Louis, Missouri, published a new video entitled "Mail-Order Braces Have Orthodontists Worried" (the "St. Louis Video"). A copy of the video is separately filed with the Court as Exhibit 2. The video remains publicly available at http://mms.tveyes.com/Transcript.asp?StationID=1885&DateTime=2%2F20%2F2018+4%3A41%3A38+AM&Term=Smile+Direct+Club&PlayClip=TRUE.

20. In the St. Louis Video, a person named "Kyle" is shown sitting in a dental chair and states that he signed up for a service to provide aligners for his malocclusion.

21. The St. Louis Video then cuts to a reporter discussing SmileDirectClub's services.

22. The St. Louis Video then returns to "Kyle" who claims at the end of the process, the aligners "didn't move my teeth," he feels "a little bit ripped off," and he "can't bite down all the way."

23. At the end of the St. Louis Video, the reporter states, "The man we called Kyle in that story – that's not really his name – we had to change it because he took his mail order braces company to small claims court. He got a refund and he had to sign a non-disclosure agreement."

24. The person named "Kyle" in the St. Louis Video is Defendant.

25. The St. Louis Video was distributed to another NBC affiliate in Charlotte, North Carolina, WCNC.

26. WCNC modified the St. Louis Video by adding additional commentary from a WCNC reporter.

27. WCNC then published the modified St. Louis Video along with a written article regarding the contents of the video (the "Charlotte Video"). Copies of the Charlotte Video and accompanying article are attached hereto as separately filed Exhibit 3.

28. The Charlotte Video remains publicly available at http://www.wcnc.com/article/news/local/orthodontists-warn-about-braces-by-mail/275-521251898.

29. Upon discovery of Defendant's publicity statements, counsel for Plaintiff sent a letter to Defendant in which it demanded assurances from Defendant that he would comply with the terms of the General Release agreement. A copy of the letter is attached hereto as Exhibit 4. Defendant did not respond to the letter.

5

Case 3:18-cv-00320   Document 1   Filed 03/28/18   Page 5 of 11 PageID #: 5

### C. Plaintiff's Harm from Defendant's Actions

30. By breaching his confidentiality obligation and making false statements regarding his experience with SmileDirectClub, Defendant has caused significant harm to SmileDirectClub.

31. According to 2016 Census estimates, the St. Louis, Missouri, metro population is approximately 2.8 million people.

32. According to 2016 Census estimates, the Charlotte, North Carolina, metro population is approximately 2.4 million people.

33. Defendant's statements in the St. Louis Video and Charlotte Video may have reached over 5 million people.

34. The above population estimates do not include those individuals outside of the St. Louis and Charlotte metro areas who may have searched the Internet regarding SmileDirectClub only to find the St. Louis Video and Charlotte Video containing his false statements.

35. Upon information and belief, Defendant's breach of the confidentiality obligation and false statements have caused one or more individuals to not use Plaintiff's products and services in an amount in excess of $75,000.

36. Upon information and belief, Defendant's breach of the confidentiality obligation and false statements have caused Plaintiff to lose money and suffer irreparable harm to Plaintiff's reputation and goodwill.

## V. CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

37. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

38. Plaintiff and Defendant entered into the General Release agreement.

6

39. The General Release agreement is binding and enforceable.

40. Plaintiff paid, and Defendant received the monetary consideration set forth in the General Release Agreement.

41. Defendant materially breached the confidentiality obligation in section 4 of the General Release agreement through, at least, his interview in the St. Louis Video and Charlotte Video.

42. Defendant's breach of the confidentiality obligation has caused harm and damage to Plaintiff by encouraging 5 million or more people to not use Plaintiff's services and products.

43. Plaintiff is entitled to all available remedies provided by Tennessee law, including, but not limited, to temporary and permanent injunctive relief; Defendant's wrongful gain; any damages sustained by Plaintiff; and costs.

## COUNT II

### DEFAMATION

44. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

45. Defendant has made, and continues to make, at least the false statements regarding the alleged failure of Plaintiff's products to move his teeth and that he was "ripped off."

46. Defendant made the false statements with knowledge that the statements were false and defaming to Plaintiff, or with reckless disregard for the truth of the statements or with negligence in failing to ascertain the truth of the statements.

47. Defendant's false statements were published to over 5 million people through the St. Louis Video and Charlotte Video, as well as the continued publication of those videos on the Internet.

48. Defendant's false statements have caused Plaintiff damages.

7

49. Defendant made the false statements intentionally, willfully, wantonly, and maliciously.

50. Plaintiff is entitled to an award of punitive damages against Defendant.

51. Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief against Defendant to stop the illegal conduct.

## COUNT III

### TRADE LIABEL/PRODUCT DISPARAGEMENT

52. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

53. Defendant has made, and continues to make, at least the false statements regarding the alleged failure of Plaintiff's products to move his teeth and that he was "ripped off."

54. Defendant's false statements are direct attacks on the quality of Plaintiff's goods and services.

55. Defendant made the false statements with knowledge that the statements were false, or with reckless disregard for the truth or falsity of the statements.

56. Defendant's false statements were published to over 5 million people through the St. Louis Video and Charlotte Video, as well as the continued publication of those videos on the Internet.

57. Defendant intended for publication of the false statements to result in harm to the interests of Plaintiff and recognized or should have recognized that his false statements were likely to cause harm.

58. Defendant's false statements have caused Plaintiff damages.

59. Defendant made the false statements intentionally, willfully, wantonly, and maliciously.

8

60. Plaintiff is entitled to an award of punitive damages against Defendant.

61. Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief against Defendant to stop the illegal conduct.

## VI. ENTITLEMENT TO INJUNCTIVE RELIEF

62. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

63. By reason of Defendant's acts alleged herein, Plaintiff has and will suffer immeasurable, and thus irreparable, damage to its business, reputation, and goodwill.

64. Upon information and belief, Defendant intends to continue to do the acts complained of herein unless restrained and enjoined.

65. Plaintiff's remedy at law is inadequate.

66. Plaintiff is entitled to a temporary restraining order, and preliminary and permanent injunctions prohibiting Defendant, and his affiliates, agents, and employees, and anyone acting with his authority or on his behalf, from directly or indirectly breaching the confidentiality obligation in the General Release agreement or making false statements regarding Plaintiff's products and/or services.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A. The Court enter a judgment in favor of Plaintiff and against Defendant as to all causes of action alleged herein;

B. That this Court issue a temporary restraining order and preliminary and permanent injunctions pursuant to Tennessee law, and equity, enjoining and restraining Defendant, and his affiliates, agents, and employees, or anyone acting with its authority or on its behalf, from directly or indirectly breaching the confidentiality obligation in the General Release agreement or making false statements regarding Plaintiff's products and/or services;

C. That, within five (5) days of issuance of a temporary restraining order, preliminary and/or permanent injunctions, the Court order Defendant to file a sworn statement under oath and subject to penalty of perjury that it has fully complied with the terms of the restraining order and injunctions;

D. That Defendant be liable to Plaintiff for any award of monetary damages, treble damages, punitive damages, costs, and/or attorney fees;

E. That Defendant be required to return to Plaintiff the entire amount paid to him by Plaintiff with interest;

F. That pre-judgment and post-judgment interest be awarded to Plaintiff; and

G. That this Court grant such other and further relief as it shall deem just.

## DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded for all issues so triable.

Respectfully submitted,

BAHOU MILLER PLLC

*Isl Nicholas R. Valenti*
Samuel F. Miller, TN Bar No. 22936
Andre J. Bahou, TN Bar No. 028621
Nicholas R. Valenti, TN Bar No. 35420
Fifth Third Center - Suite 2000
424 Church Street
Nashville, Tennessee 37129
Tel/Fax: (615) 988-9590
Email: SamMiller@bahoumiller.com
   AJBahou@bahoumiller.com
   NValenti@bahoumiller.com

ATTORNEYS FOR PLAINTIFF
SMILEDIRECTCLUB, LLC

# VERIFICATION

STATE OF TENNESSEE )
)
COUNTY OF Davidson )

I, Alexander Fenkell as Co-Founder of SmileDirectClub, LLC have read the foregoing Verified Complaint and the factual allegations stated therein are true and correct to the best of my knowledge, information, and belief.

_[signature]_

Sworn to and subscribed before me on this the 27th day of March 2018.

Notary Public: _SMorgen[signature]_

My Commission Expires: 9/7/2021

_[Notary seal: Sarah Morgenstern, State of Tennessee Notary Public, Sumner County, My Commission Expires 9-7-2021]_